KEHOE, JOHN, J., Associate Judge
(dissenting).
This is an appeal taken by the plaintiffs below from an order of the trial court granting the defendant’s motion for a new trial after judgment in favor of the plaintiffs had been rendered by a jury duly impaneled to decide the issues raised by the pleadings, upon the evidence presented to the jury and upon the instructions of law given to the jury by the court.
The order granting the motion for new trial assigns as reasons for the granting thereof, the following:
*52 (a) The verdict is contrary to the law.
(b) The verdict is contrary to and not responsive to the charges of the court given to the jury.
(c) The verdict is inconsistent with the charges of the court.
(d) The verdict is illegal.
(e) The verdict is conditional and impossible of performance.
In the order granting the new trial, it is not specified to which charge of the court the verdict was not responsive, nor is it recited which charge of the court given to the jury is inconsistent with the verdict of the jury.
The verdict as rendered by the jury is inconsistent with the charge given to the jury by the court, in that, the jury was instructed that they could find and award to the plaintiff attorney’s fee and that said attorney’s fee would be in the sum of $100 plus 10% of the amount of damages awarded to the plaintiff. On page 102 of the Transcript, this question was discussed by the court with the attorneys and with the jury, and it was determined that the award included in the verdict included attorney’s fee. This verdict in its form was accepted by the court, with this comment, “You have to go back to your math book, I am sure”. There was no objection as to the form of the verdict, and as indicated by the court, by a mathematical calculation the amount of the jury award for attorney’s fee could reasonably be calculated. To this extent, the verdict was inconsistent with the instructions given the jury by the court. However, the verdict in its form was accepted by the court and not objected to by either the plaintiffs’ or the defendant’s attorney.
Briefly stated, the facts in this case are that the plaintiffs acquired ownership of a certain 1952 Nash automobile; that they purchased from the defendant an insurance policy to indemnify them against loss that may be occasioned by accident or collision, and the defendant, by its contract of policy of insurance, agreed to insure the owner against such loss to the actual cash value of the automobile.
The evidence established that this collision occurred in Dade County, Florida, on December 10, 1952. The plaintiffs alleged that as a result of the collision the automobile was totally damaged. From the record made before the trial court, it appears that all parties concede that the value of this particular automobile on the date of December 10, 1952, was $2,500. The plaintiff offered as a witness, one Burton Ginsberg, who was affiliated with the Nash Motor Company of Miami, who testified (Tr. 28) that he estimated the value of automobile in question to be in the vicinity of twenty-eight to twenty-nine hundred dollars. He repeated this estimate of value on cross-examination (Tr. 36). The evidence disclosed that there was no connection or relationship, business or otherwise, between this witness and the plaintiff, or either of them.
Plaintiffs next offered the testimony of Frank V. Quigley, who had been in the general automobile business since 1910. He testified that the wrecked Nash automobile was brought into his garage in December of . 1952, that when the automobile was brought into his garage it was “beyond repairs”, and on page 42 of the Transcript he testified that in his opinion when the automobile was brought into his garage it was worth about $125.
The defendant offered testimony as to the value of the car after the accident and called as one of its witnesses, Ben Tutan, a Miami automobile dealer, who testified that he had examined the car while in Quigley’s Garage, and testified that in his opinion the value of the car after the accident, but before repairs, would be $1,-736 (Tr. 75). Mr. Tutan further testified that he made an appraisal of the vehicle in company with a Mr. Kuehner.
*53 Mr. Kuehner testified that he was an adjuster for the defendant, Calvert Fire Insurance Company (Tr. 93) and further testified that in his opinion the Nash automobile in its damaged condition was worth $1,700 (Tr. 98).
The defendant called on its behalf, one Paul Westberry, a damage appraiser and adjuster for the All State Insurance Company, who testified that he worked for the Nash Miami Motor Company in 1952, that in his opinion the value of this Nash automobile in its wrecked condition was worth over a thousand dollars, possibly twelve hundred dollars (Tr. 85).
Thus, the question went to the jury on this factual situation: The value of the automobile at the time of the collision was $2,500; and the conflicting testimony of the various witnesses, hereinabove recited, as to the value of this automobile after the wreck.
The jury was properly instructed (1) that it was the function of the jury to determine the issues of fact, (2) that the jury, in weighing the evidence, should take into consideration the appearance and conduct of the witness on the stand, the interest, if any, or lack of interest which the witness has or may have in the result of the suit, (3) that the jury was the sole judge of the weight of the testimony and the credibility of the witness, that the jury should try to reconcile all conflicts in the evidence, but should they be unable to reconcile the conflicts, that it was within the province of the jury to reject such testimony as they find to be untrue and to accept and rely upon such testimony as they find to be worthy of belief, (4) that the damages that the plaintiffs would be entitled to would be the difference between the value of the motor vehicle immediately prior to the accident in which the vehicle was damaged and the (sic) value of the vehicle in its damaged condition, reduced by the sum of $50, which was the amount of damages ■that the plaintiffs were required to pay .under the terms of the insurance policy.
The jury was also instructed, “You will also in your verdict assess attorney’s fees at the stipulated amount of One Hundred ($100.00) Dollars plus ten percent (10%) of the amount of damages you find the plaintiffs to be entitled to on the car.”
Under proper instructions, the jury retired and deliberated on the evidence submitted to them. Obviously, the jury could not believe the testimony of the plaintiffs’ witnesses as to the value of the car after the accident, and at the same time believe the testimony of the defendant’s witnesses as to the value of the car after the accident. It is not assuming too much to assume that the jury, in its deliberation, considered the interest in the outcome of this case that Mr. Westberry or Mr. Kueh-ner might have had. In any event, the jury elected to accept and rely upon the testimony of the plaintiffs’ witnesses as to the value of the car after the accident, and by going to the math book, it could easily be determined that it was the intent of the jury to award to the plaintiff the value of the car after the accident, a money judgment in the sum of two-thousand three-hundred seventy-odd dollars, and at the same time award the plaintiffs’ attorney an attorney’s fee in the sum of three-hundred thirty-odd dollars.
The verdict of the jury is thoroughly consistent with the charges of court given to them by the court. It perhaps would have been a better practice for the trial judge to have sent the jury back in and to let the jury break down the verdict as to what part would be awarded to the plaintiffs and as to what part would be assessed as attorney’s fees. But, as the trial judge observed, which was not objected to by counsel, “You have to go back to your math book”.
I further think that the order granting a new trial should have specified with particularity the reasons for setting aside the verdict of the jury.
If the trial court felt that the damages awarded were excessive under the evidence *54 and under the charge given, the trial court should have granted a new trial because of the excessive award, unless the plaintiff should enter into a remittitur in an amount to be determined by the trial court. However, this was not done, notwithstanding that ground 9 and ground 10 as set forth in the defendant’s motion for a new trial raised this particular point. It would appear from the order of the trial court granting the motion for a new trial that grounds 9 and 10 as stated in the motion were denied.
It has been long established by the Supreme Court of Florida that a jury verdict should not be set aside and a new trial granted simply because the jury’s verdict does not accord with the trial court’s view of the evidence and justice of the case where there is substantial evidence supporting the verdict (Labruzzo v. Atlantic Dredging & Construction Co., Fla., 73 So.2d 228).
The above language was recited in the opinion of the District Court of Appeal, Second District, in the case of Redwing Carriers, Inc. v. Helwig, 108 So.2d 620, 623. That court went on further to say in that opinion:
“Nor should a trial judge pit his judgment against that of a jury in resolving conflicts in the evidence or in deciding between conflicting inferences in the same testimony.”
It was further held:
“It is error to grant a new trial when the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished except to have another jury review the cause.”
The collision in which the value of this automobile was diminished occurred in the year 1952, eight years ago. A careful review of the transcript of the proceedings before the trial court discloses that there is ample evidence to justify and support the jury s findings as to the damages incurred by the plaintiffs.
I respectfully dissent from the opinion of the majority of the court and feel that the order appealed from should be reversed and that judgment be entered in, accordance with the jury’s verdict.